The next case on our call is agenda number 8, case number 108-690, People of the State of Illinois v. Perry Ward. May I please have a moment, counsel? There's people still moving behind you. I'm sorry. It's okay. If you'd like to take this opportunity to tell us who you are, that would be good, too. Sure. My name is Jessica Pammon. I represent the appellant, Perry Ward. Your Honors, Perry Ward was charged, tried, and acquitted of the criminal sexual assault of Lisa S. Under section 115-7.3, the state was allowed to admit evidence of that alleged offense in a subsequent trial. The evidence should have been prohibited by collateral estoppel. The United States Supreme Court has recognized that the law attaches significant weight to an acquittal. As such, the doctrine of collateral estoppel, which is embodied in the double jeopardy clause of the federal and state material fact that has been determined by a valid judgment. It protects a defendant from having to run the gauntlet a second time for something he has already been prosecuted for. This Court has said in People v. Tenor that collateral estoppel applies and three requirements are met. First, where the court in the prior judgment rendered a final judgment. Second, where the party in the prior judgment is the same or in privy of the same party in the prior judgment. And three, where there's an issue decided in the prior judgment that is the same as an issue litigated in the subsequent judgment. In our case Is there an issue of forfeiture here, Counsel? Excuse me, like on what basis? Because it wasn't raised at trial. Well, Your Honor. Or in post-trial? Correct. I understand that trial counsel did argue that the evidence should not have came in. Counsel argued that the evidence was too prejudicial to come in. So, trial counsel didn't make the exact argument. He didn't make it based on collateral estoppel. But it was on similar grounds. And even if this court were to find that the issue was not preserved, Your Honor, it would fall under plain error. Because it affects the defendant's right to be tried by an unbiased jury. But did the defendant argue collateral estoppel at trial or in post-trial? No. No. All three requirements of the collateral estoppel doctrine are met in this case. The Lisa S. jury rendered a final judgment when it acquitted Perry Ward. Second, the state, the people of the state of Illinois is the same exact party that prosecuted both cases. And third, there was an issue that was litigated in the Lisa S. case that was litigated again in the Mabel M. case. And that is whether or not Ward committed a sexual assault against Lisa S. Aren't there many reasons why a jury might return a finding of not guilty in an earlier case that wouldn't be the same issue as we have here? Well, in this case, we can determine that the issue that was litigated was one of consent. The parties at trial, they had the transcripts of the Lisa S. case and they say that the only issue that was in dispute was whether or not the sex was consensual. And again, the United States Supreme Court says that we have to apply collateral estoppel with a realistic eye, not in a hyper-technical fashion. And it says that when you can tell, when you can look on the record and you can tell what issue in particular was determinative, and an acquittal, that is when collateral estoppel applies. And in this case, we can tell, we can tell that there was only one issue in dispute and that issue was litigated in favor of our client. And so collateral estoppel says that particular issue cannot be relitigated again. This Court's longstanding decision in P.V. Heron is directly on point and would effectively have to be overruled if this Court were to affirm the indictment charged under a theory of accountability with a crime against nature against the same complainant on the same date. The defendant was acquitted of the rape charge and particularly one of the rape charges was for statutory rape, meaning the only fact necessary to prove guilt was to show that there was intercourse. And so this Court held that the state should have been stopped from introducing evidence at the subsequent trial that the defendant had intercourse with the complainant because the acquittal amounted to a determination by the jury that the defendant did not have intercourse with the complainant. The same analysis applies in this case. And Lisa S.'s case, Ward did not contest the sexual encounter, but he asserted that it was consensual. So the jury then, by finding him not guilty, necessarily determined that Ward did not have nonconsensual sex with Lisa S., and therefore did not commit a sexual offense. Therefore, just like in Heron, the state should have been precluded from relitigating whether or not Ward had nonconsensual sex with Lisa S. Ms. Pammon, isn't Heron distinguishable because in that case, the same act of sexual penetration was charged as an element of two offenses in separate trials against the same defendant, right? No, that is not correct. The rape charge was an act of intercourse and the crime against nature was a separate act and he was charged by a accountability for his co-defendants committing the crime against nature. So these are two separate acts that took place. One, he was charged with committing and the second one, he was charged by accountability for his co-defendants committing. But there's no doubt if here, separate victims were assaulted at separate times, right? Correct. But the collateral estoppel, that's not one of the three requirements that it has to be the same exact transaction. It just has to be an issue that was litigated in the first trial that cannot be relitigated again. And here, that is what we have. We have the same issue being brought in that he already ran the gauntlet for and was acquitted of and is being litigated again in the subsequent trial. In affirming Ward's conviction, the appellate court completely ignored Heron, did not mention it or address it at all. Instead, the appellate court held, and the state also contends, that collateral estoppel doesn't apply because the defendant was acquitted because the other crime's evidence in the Ensign case was governed by a lower standard of proof. However, to be clear, the only standard that the jury is given in Illinois is one standard, and that is to judge all of the evidence by proof beyond a reasonable doubt. The jury is not given a separate instruction by which to govern part of the evidence, you know, the other crime's evidence, for example. They're given one instruction, and that's 2.03, and that is that the presumption of innocence is not subject to a separate instruction. It is not, and I quote, overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is guilty. So that instruction makes no distinction as to any other standard that the jury is supposed to govern the other crime's evidence by. The state, in fact, is confusing the judge's standards of admissibility with the jury's standard of proof that they use to assess the evidence. For example, in the case of Gold, Huddleston, and even Donahoe, those cases address the standards that the judge uses to determine whether or not the evidence is admissible to begin with. It does not discuss the standard of proof that the jury uses once the evidence is in to assess issues of guilt and innocence. The state was welcome to use the evidence, for example, at the sentencing hearing where the standard of proof is lower. Jackson and now tell us that, people be Jackson and people be now, that where the standard is lower, the evidence can't come in. Those types of cases would be distinguishable, and those are the cases that the appellate court cited for this position. But here we had two criminal trials. Lisa S.'s trial and Mabel M.'s trial. The standard of proof was the same for both juries, and that was proved beyond a reasonable doubt. There was no other standard given, instructed, or anything like that. So the standards are the same here. This is different from people be Jackson and people be now, where the evidence is being used at a sentencing hearing or at a discharge hearing. In our case we have two criminal trials. This court in Heron made no distinction as to any other standard of proof that the other crimes evidence should be judged by. The state also contends that the collateral stop doctrine doesn't apply because the ultimate issue in the Lisa S. case is different from the ultimate issue in the Mabel M.'s case. And Warren concedes that the ultimate issue in the two cases is different. Whereas the issue in the Mabel M. case is whether or not he assaulted Mabel M. But the collateral stop doctrine does not concern that. The collateral stop doctrine is concerned with issue preclusion. Are there issues that we can determine that were already litigated in his favor in this prior case? Doesn't have to be the ultimate fact. That would be a double jeopardy claim. And we were saying this is the ultimate fact in this case and he's being tried for that same thing again. We'd have a pure double jeopardy claim, but collateral stop was just a small subsection of double jeopardy that says, let's look at the issues. Can we tell if there was an issue already decided? And that is what we have here. What exactly is the issue that was decided in the first case that's the same issue here when there are different victims? The issue that was decided in the first case was whether or not Ward sexually assaulted Lisa S. The jury in the Mabel M.'s case was asked to determine that very same fact when that evidence was admitted to show his propensity, they were given an instruction that they were to again determine whether or not they believed he committed the offense against Lisa S. and to determine what weight they wanted to give that evidence in regards to any propensity that he might have to commit sexual offenses. So that issue was brought in to the Mabel M.'s trial and the jury was instructed to consider that offense and determine if they believe it happened and what weight they want to give it. And we're saying that that evidence should not be relitigated in the subsequent trial because there was a final judgment. There was an acquittal. An acquittal has special weight. There's some finality to it. He's already had to put on a defense for that issue. And he got an acquittal and now he has to redefend himself on a charge that he was already acquitted of. Your Honors, aside from collateral estoppel, there's nothing in the statute itself that indicates that the statute was intended to admit acquitted offenses as it did in this case. If we just look at the plain language of the statute, it says under Section 115-7.3 that evidence of a defendant's, and I quote, commission of another offense, end quote, is admissible to show a commission of another offense. So someone who's been acquitted by law has not committed an offense. This is virtually what we're saying here is that 12 jurors have decided that that person is not guilty of committing an offense. So how does that show evidence of a commission of an offense? And even the legislative history, if we just go beyond the plain language, the legislative history We don't get to legislative history if it's plain, do we? No. We don't. But if there is any ambiguity in the plain language, I'm saying that the legislative history supports this interpretation as well when we look at what the comments were when enacting this new law that derogated the common law ban on propensity evidence. Senator Rodongo, he said that the statute was intended to protect society against sex offenders, repeat offenders, people like that. And so by law, Mr. Ward, he had no sex convictions. He was not a repeat offender. He does not fall into that category that the statute was intended to target. And also there's some other comments that suggest that uncharged offenses were also intended to fall within the purview of the statute. Not acquitted offenses, but uncharged offenses. And the logic behind that was the comments were such that they wanted to give women an opportunity to come in who might have been fearful to come in at a prior time on their own. But they would come in to corroborate someone else's testimony or whatever. Under either scenario, though, acquitted offense would not fall within that purview, because if you have a situation where someone was scared to come forward and then they come forward at a subsequent trial to corroborate another person's testimony, in our situation, Lisa S. had her day in court. She did come forward. She did present her case. The state contends that when you talk about committing an offense, that courts find the defendant guilty or not guilty, not guilty or innocent. I mean, does that have any import on what you're saying? I'm saying you're drawing the, using the statute to say the offense wasn't committed. At best, it's the defendant's not guilty. It doesn't mean that he didn't commit, he or she didn't commit the offense, right? Right. But we have to understand that an acquittal is given special weight. It's different from anything else. It means something. And to say that an acquittal, oh, well, it doesn't mean that. You're not saying it's short of a declaration of innocence, is it? Well, I mean, the cases say that an acquittal does not mean that the person is innocent. I can't say that an acquittal means that someone is innocent. But what it does say is equally important. And I think that in framing the statute, that the legislature understood that, which is why it wasn't included, which is why they said that it's for sex offenders, which doesn't include people who have no convictions, and why they said it's for, you know, people in a situation where there's an uncharged offense where the person was scared to come forward. I think that they understood the significance of an acquittal and did not intend to have the situation occur that occurred in Mr. Ward's case. Finally, if there be any ambiguity at all in the statute, statutes such as 115-7.3, which derogate the common law ban on propensity evidence, are to be strictly construed in the defendant's favor. That's a rule of statutory construction. And here, because section 115-7.3, it derogates the longstanding ban that we've had on propensity evidence, if the statute is ambiguous and we can't tell what the intent is, then it should be construed in Mr. Ward's favor. Was the statutory interpretation issue counsel raised at the trial court level? No. Was it raised in the appellate court? No. Was it raised in your petition for leave to appeal? No, it was not specifically raised. Then why should we consider it? Because I think what we're trying to figure out here is the limitations of the statute. We're trying to figure out what are the limitations in regards to acquitted offenses. And I think you have to look at the statute itself to determine that. It's very much so intertwined with just the statute itself. Whether or not the evidence is just precluded by the statute itself, they both are trying to address the same thing. We're just trying to understand what are the limits of this statute in a situation like we have now, where someone has been acquitted of an offense. At a minimum. So you're saying don't apply forfeiture to the collateral estoppel rule, to the collateral estoppel argument, because we raised a similar argument that you could, you know, if you were liberal, you could embrace the collateral estoppel rule. And that's your same argument for the statutory argument, that somehow we should violate rules of forfeiture and waiver in this court by taking what was raised and somehow seeing how they could have raised the statutory argument? I'm trying to understand that. Well, Your Honor, we believe that the issues are very similar to issues that were raised in the trial court, and that is that the evidence should have been precluded. But again, Your Honors, this can be plain error as well. We're trying to understand what are the limits of this statute in a situation like we have now, where someone has been acquitted of an offense, and this court has said, and people be lingering, that when other crimes evidence is admitted erroneously, that it infringes upon a defendant's right to an unbiased jury. And so we're arguing that if this court finds that it is waived, that plain error should apply. At a minimum, Your Honors, if the evidence was allowable under the statute, and if the evidence was not precluded by collateral estoppel, then at the very least, fundamental fairness required that the jury be informed that Mr. Ward had been acquitted of the offense. As it stood, the state got all the advantages. They were allowed to present the evidence and then allowed to parse out the parts of the evidence that were unfavorable to them. By preventing the jury from knowing that Ward had been acquitted in the other offense, the jury was left to speculate whether or not he was convicted of that offense or whether or not the charge was pending and he would be convicted in the future, when all along he had been acquitted and the jury never knew this. It also denied the jury the benefit of probative evidence that it needed to weigh this other crime's evidence. The jury was given an instruction, 3.14, and they were told that they needed to weigh that other crime's evidence, determine what the weight was that they wanted to give to it. Well, an acquittal, if they knew that he was acquitted of that offense, that would be probative of the weight that they would give the evidence. This issue was settled in Illinois, People v. Bedoya. The court there held that fundamental fairness requires that the jury be told that the defendant has been acquitted of the offense and the other crime's evidence. And even the United States Supreme Court in Dowling v. United States, it said among the reasons why the admission of the other crime's evidence in that case did not apply to the defendant, did not violate fundamental fairness, is because the jury was instructed that the defendant was acquitted. The jury was actually instructed twice. And the United States Supreme Court mentioned that, that that's one of the reasons why the admission of the other crime's evidence in that case didn't violate fundamental fairness, because the jury was told. It was in fairness to the defendants, the jury was told. Ms. Hammond, was in the Melissa S. case, did the jury know or did the jury say that the sex was consensual when they acquitted the defendant? I'm sorry, can you? Did they say the sex was consensual in the Lisa S. case? That was the defendant's argument in the Lisa S. case, that the sex was consensual. Consensual. So the acquittal must have been based on the fact that it was consensual. Correct. That's why collateral estoppel applies. The state suggests that to inform the jury of the acquittal would be inadmissible under hearsay. Moreover, it could be admitted under the Illinois business records exception to the hearsay rule. Even the cases that the state cites for this proposition that an acquittal is hearsay, those are some federal courts, and there is a split in the federal circuit. Some courts follow that rule, some don't. But here in Illinois, that the issue is decided. Bedoya says it's required. I would ask the federal courts for any guidance on that issue. Counsel, your time is up. Sorry. For the foregoing reasons, I would ask that this court reverse the appellate court's decision. Thank you. Good morning. Assistant State's Attorney Mary Boland. I'm a prosecutor from Cook County, Illinois. I represent the people of the state of Illinois, and I'm here to report. As the court has noted and as the defendant has conceded, the collateral estoppel argument, the statutory construction arguments, have been forfeited. There's no plain error here. There's no plain error, as the appellate court found, regarding the collateral estoppel argument, because there's no error. Contrary to the defendant's argument in his reply brief, an evidentiary use of facts is very different than the ultimate use of facts. Those facts, ultimate use of facts, are facts that have to be proven beyond a reasonable doubt. And this is a Dowling case. It's not an Asher-Horan case. It's a Dowling case. And facts introduced for a limited purpose are certainly not precluded by the doctrine of collateral estoppel. If you look at Dowling, Dowling was a, the bank robbery case, the court recalls. And Dowling, he wore a mask, had a gun, was a cop, was a cop. And six weeks later, Dowling and his getaway driver, co-offender, broke into Vena Henry's home and attempted to rob her. And Vena Henry unmasked him, identified him. That case went to trial. He was acquitted. The government used the Vena Henry case in the Dowling bank robbery case. And the court specifically, the United States Supreme Court, said there's no ash issue here. There's no ultimate use of fact. These facts are used to, even if they are used to prove that the jury didn't believe beyond a reasonable doubt that he committed the home invasion of Mrs. Vena Henry, that still could be used because the evidentiary use of facts is at a lesser standard. And so not every link in the chain of evidence needs to satisfy that ultimate issue of fact. So this is clearly a Dowling case. The appellate court exactly got this correct. It's not Asher-Horan. It's not two, ash is the easiest case to identify. Ash is that six poker players, and the government tries them on a first poker player. Identification is the issue. There's an acquittal. So the government tries them on the second poker player. Well, identification was the ultimate issue in the first case. You can't raise it again. You're collaterally estopped from using it again. Horan is very similar in that there's a single sexual penetration, single transaction, same victim, two different indictments. As the defendant pointed out in her argument, the rape indictment had a statutory rape count. Therefore, sexual penetration was the only contested issue. When that case resulted in an acquittal, the government then used the second indictment to charge the crime against nature against the three Johns, John Connolly, John Horan, John Moore. The two, Moore and Connolly were found guilty of the rape. Horan was not. So when they used the sexual penetration as direct evidence of his participation in aiding and abetting the crime against nature, that issue had already been determined ultimately in the first case. So it's not an Ashton Horan issue. It's a Dowling issue. And the appellate court was correct. There's no statutory bar here. And again, this is, defendant is limited to plain error because this argument is entirely forfeited. But there's nothing in the plain language of the statute that would limit to cases that have been proved beyond a reasonable doubt. There's nothing that the statutory legislative intent would limit that evidence. In fact, what it would do if there was some sort of acquittal bar is essentially encourage the use of the statute only in cases where victims had never come forward, but not in cases where victims sought to come forward and have their cases considered. Because a prosecutor might say in a closely balanced case or in a case where it was a nontraditional case, you know what, if I move forward in this case and we're not successful, I can't use your evidence at all. Basically, there is no ability to use it. And so even though collateral estoppel wouldn't bar it, that would, instead of adding a proper purpose, as this court's determined in Donahoe was the goal of that statute, it would actually narrow the statute and frustrate its use. So obviously, that's not what the legislature intended. At the end of the day, with regard to the discretion, I point out to the court that evidentiary rulings are always discretionary in nature. And the real question here is, did the court abuse its discretion in deciding whether or not to allow the evidence? Defendant would have this court write a rule that says in fundamental fairness, always requires disclosure to the jury of the acquittal. But to draw that line requires a trial judge to balance what is properly admissible to avoid unfairness, but at the same time doesn't invade the province of the jury. In this case, that's exactly what Judge Tuman did. And a number of courts have examined this issue. This is not unique. I cited, I think, the first, the second, the third, the fifth, the seventh, the tenth, and the eleventh circuits on the federal level, all have decided it's a matter of discretion in the trial court. Many, many states have looked at this, and the overwhelming majority of states have decided it's a matter of the discretion of the trial court. In the federal courts, the general consensus is that it's irrelevant, that it's misleading, that it introduces a high probability of jury confusion. It's not even proper impeachment. You take a single witness who's talking about their experience, and they're at the hands of the defendant, and you measure that against all of the evidence in a given case, and a hearsay view of jurors who are not present, and evidence that is not present before the court, federal courts say that's not proper impeachment. And ultimately, they find it to be hearsay. Now, state courts analyze their cases based on their statutes and their case law. But state courts overwhelmingly also find it to be a matter of discretion. Right-line rules do not work very well in evidentiary decisions. When does it come in, then? There are a couple cases, a couple types of cases that it does come in. And I went through in my brief very carefully the types of cases so that this court could see the analysis. It comes in, in fairness, when there is some sort of government stamp or imprimatur on the evidence that suggests and leaves the inference that somehow the defendant was guilty of a crime. And if there is some sort of information, at times that information will come in. So how does that work? Well, in the Kinney case, that's the 2008 Supreme Court of Colorado case. In the Kinney case, there were sexual assault, there were two prior sexual assaults that had resulted in acquittals. And Kinney looked at the evidence in that case 25 times. There were references to the prior proceedings. There were lengthy impeachment exchanges with the prior transcripts. There were statements in other cases. Obviously, the jury inferred that there were other proceedings. And the jury even asked for the trial transcripts. On that basis, disclosure should have been made. Now, the defendant says that Bedoya has already foreclosed this issue. And Bedoya is a lingering type case. Lingering, if the court will recall, is the case where the defendant murdered an elderly man. And he had told his ex-wife, if you're not home when I get home tonight, I'm going to burn the house down. And that's exactly what he did. But these were separate crimes for separate purposes against separate victims with separate motivations. The extensive evidence of the arson came in in the murder case. And this court said there's no proper purpose for this evidence. It's not only extensive and overwhelming, there's no purpose for this evidence. And so it was a fundamental reversible error. Well, Bedoya, if you'll recall, is that case where the Milwaukee police officer and his partner came to Chicago, decided to go to several bars. During that evening, they apparently shot up a number of buildings, including Cardinal Bernadine's residence. And then at some point, Bedoya got into an argument with a bouncer and shot him dead. So he was charged with murder and these firearm offenses along with Koch, his partner. And in a first trial, there was issues with regard to the murder, so it had to be reversed on a self-defense issue. But Bedoya was acquitted of those firearms offenses. And then in the meantime, Koch pled guilty to the firearms offenses and decided he would testify against Bedoya. And what happens then in this trial that Justice Wolfson authored the opinion in the Bedoya case, in the retrial, there were seven witnesses and 27 exhibits about this building shooting spree. And Justice Wolfson wanted to make the point that this is a lingering case. There really was no proper purpose except proximity of time and location. These were not the same motives. In fact, the defendant, Bedoya, had been acquitted, but Koch had been pled guilty. And I think one of the most telling exchanges in that case was when the defense counsel said to Koch about the building shootings, Koch the partner, about the building shootings, and he said no. And defense counsel said to him, well, then why did you plead guilty to aggravated discharge of a firearm? And Koch's answer was, by accountability. Well, when you have someone sitting up there and says, I pled by accountability, the jury is going to look at the only other person involved in the case and go, well, then the implication must be who is the shooter. In that type of scenario, fairness dictates the jury be told. And that's what it's all about. It's all about fairness. It's all about accountability. It's all about trial courts making that decision. It is all about the discretion of the trial court. And there are courts that allow it. There are courts that don't allow it. And again, it's a fact by fact. Unlike Kinnear, Bedoya, where the jury was overwhelmed with these references to warrants, charges, proceedings, the criminal justice process, here Judge Tuman ensured that the jury was never informed of any criminal justice process at all. And that's the better practice. Keep the scope, keep the breadth of the testimony limited. Judge Tuman said there's DNA evidence linking these cases. You don't need it. Don't bring it in. The state did not bring it in because defendant was claiming consent. He was not claiming identification. Keep the testimony focused and illuminated on the limited purpose for which that testimony is admitted. Here, the lack of innocent intent, claiming these women are prostitutes, I'm paying them nominal fees to have sex with me, limiting instructions. The court not only gave the limiting instruction before Ellis testified, gave it after Ellis testified, gave it again before the jury deliberated. And it was reinforced by the prosecutor in this case that said we cannot find the jury guilty. We can't ask you to find defendant guilty of sexually assaulting M.M. because you believe what he did to Ellis. That would be improper. So the jury was specifically told, and I point out in Bedoya, there were no limiting instructions. Seven witnesses, 27 exhibits, not one single limiting instruction. The jury was free to consider that evidence for whatever. Here, Judge Tuman kept the focus very narrow. The focus was on M.M., what happened to her, the behavior, the character, the conduct, the experience that Ellis had. That was the limited testimony that came in as other crimes evidence. It's for you to determine whether this crime occurred with regard to Ellis and also what weight to give it. Clearly, there was a single fleeting reference to some prior, did you testify prior, the defendant asked when he asked if she knew how to dress for court, if she had come on her own, if the prosecutor prepared her. That single fleeting reference is not sufficient to overcome the presumption that juries follow their instructions. This is not a Bedoya case. This is not a Lindgren type case. This was a case where Judge Tuman carefully analyzed it. The parties discussed it. They had the transcripts of the Ellis presumption. They had the evidence. They had the evidence. They had the proceedings. And it is well within the discretion of the court to keep out the criminal justice process entirely and focus the jury on evaluating the credibility of the witness that sits before it and the credibility of the statements of that witness that were fully cross-examined by the defendant. The defendant also testified and gave his version of events so that the jury could evaluate both sides of the case. So we would ask this court to affirm the appellate court's opinion upholding the defendant's conviction for criminal sexual assault. Thank you. Your Honors, the State has said that this is a Dowling case. This is not a Herron case. This actually is not a Dowling case. In Dowling, defendant wasn't able to show that the acquittal in the first trial represented a determination that he wasn't one of the people that entered Henry's house, meaning he wasn't able to show that the issue decided there was identity. Collateral estoppel only applies when you're able to narrow it down and tell what the determination was made, what the acquittal hinged on in that case. That did not happen in Dowling, but it did happen in Herron. That's what makes our case analogous to Herron, because in our case, the defendant was acquitted, but in Dowling's case, we know what the material fact that was litigated was, and we're saying that fact cannot be relitigated. So the State is wrong. Our case is not like Dowling. Dowling, they couldn't tell. They didn't know how the defendant got acquitted. They didn't know what particular facts. But the collateral estoppel doctrine recognizes that there will be some acquittals where you can tell what fact was litigated. Moving on to the acquittal instruction, the State is right. This is about fairness. The State argued that it would frustrate the use of this, that it would be confusing or that it would be irrelevant to tell the jury about the acquittal, but it would be fair. It would be fair. And it's almost as though the State is arguing that the acquittal has no significance, that it means nothing, that it's insignificant, when the United States Supreme Court has always held that it is very significant. It has a lot of weight, and it should be accorded that, even to Mr. Ward. In Bedoya, where the appellate court held that the instruction was required, we'd argue that if the instruction was required by fundamental fairness in Bedoya, it would certainly be required in a case like the incident where the evidence was used for a riskier purpose. The evidence here was used to show his propensity, which historically we have bans because of the risk of prejudice that that poses to a defendant, that they will be convicted based on the jury's just belief that he's a bad person. Or whatever the case may be. But here the evidence was admitted for his propensity, unlike in Bedoya where the evidence was admitted for a non-propensity purpose, a purpose that doesn't even pose as much risk in the court there found that the instruction is required. So we have an even stronger case than in Bedoya. Your Honor, what the appellate court has said by its decision is antithetical to the Constitution. They're saying basically that an acquittal has virtually no legal significance, that an acquitted defendant finds no protection under the Fifth Amendment prohibitions of the Double Jeopardy Clause, and even when the evidence is admitted against him, he cannot inform the jury of his acquittal. It's a double standard in which the state gets all the advantages, and it is inconsistent with notions of a fair trial because it forces a defendant to reestablish a defense for a case that he has already successfully defended. For this reason and the reasons cited in our brief, Your Honor, I'd ask this court to reverse and remand this clause for a new trial.